Roush v. State.

---

| 34 | 325 |
| r46 | 654 |
| 34 | 325 |
| 51 | 635 |
| 34 | 325 |
| f58 | 466 |

HENRY ROUSH v. STATE OF NEBRASKA.

[FILED MARCH 23, 1892.]

1. **Forgery:** CORPORATE CAPACITY. In an information for knowingly uttering and publishing a bank draft with a forged indorsement of the name of the payee thereon, it is not necessary to allege that the bank by which such draft was drawn is a corporation.

2. ———: INTENT TO DEFRAUD. In an information for forgery it is sufficient to charge an intent to defraud in general terms. It is not necessary for the state to allege or prove an intent to defraud any particular person.

3. ———: MATERIAL ALLEGATION. In an information for knowingly uttering and publishing a bank draft with the forged indorsement of the payee thereon as follows: " B. F. H., Mgr.," *held*, that the abbreviation aforesaid is a material and essential part of the indorsement, and must be proved like any other material allegation of the information.

4. **Evidence examined**, and *held*, to sustain the verdict.

ERROR to the district court for Douglas county.   Tried below before ESTELLE, J.

*John T. Cathers*, for plaintiff in error.

*George H. Hastings, Attorney General, contra.*

POST, J.

The plaintiff in error was tried in the district court of Douglas county on an information containing two counts. In the first count he is charged with forging an indorsement on the following instrument:

"SENECA, KANSAS, March 7, 1891.

"FIRST NATIONAL BANK,

"Pay to the order of B. F. Humes, Mang., $50, fifty dollars.                         WIRT E. WILKINS,

"*Cashier.*

"To Schuster-Hax National Bank, St. Joseph, Mo."

The indorsement in question is as follows: "B. F. Humes, Mgr."

In the second count he is charged with knowing, uttering, and publishing the aforesaid instrument, including said forged indorsement, with intent to defraud. A verdict of guilty was returned as to the second count, but no finding was made by the jury as to the first count of the information. A motion for a new trial being overruled, judgment was entered on the verdict, which we are asked to reverse for reasons hereafter stated. Two objections are urged to the sufficiency of the information, which will be considered in this order. First, that it does not appear therefrom that the instrument in question is genuine; in other words, that it was necessary to allege that the First National Bank of Seneca, Kansas, was a bank duly and legally organized in pursuance of statutory authority, with authority to issue said paper. The instrument set out in

the information purports to be a draft, such as is usually
drawn by banks upon correspondents, and, therefore, ap-
parently good and valid for the purpose for which it was
executed. (*Roode v. State,* 5 Neb., 177; Maxwell's Crim.
Proced., 163.) It was not necessary to allege in the in-
formation that the bank named therein is a corporation
organized under the laws of the state of Kansas or the
general government. (*State v. Hart,* 17 N. J. L., 327;
*People v. Stearnes,* 21 Wend. [N. Y.], 409; *State v. Jones,*
1 McMull [S. Car.], 236*; *State v. McKiernan,* 17 Nev.,
224.) Within the principle of the above cases is *Braith-
waite v. State,* 28 Neb., 832.

It is next objected that the intent to defraud is charged
in general terms only. This is expressly authorized by
the Criminal Code, section 417. It is not necessary to
charge or prove an intent to defraud any particular per-
son. (Maxwell's Crim. Proced., 149, 152; 2 Bishop's
Crim. Proced., 401; *State v. Hart,* 67 Ia., 142; *People v.
Van Alstine,* 57 Mich., 69; 8 Am. & Eng. Encyc. of
Law, 507, and note.) We have carefully examined the
bill of exceptions and can see no sufficient reason for dis-
turbing the verdict on the ground that it is not supported
by sufficient evidence. Plaintiff in error is identified be-
yond doubt as the party who indorsed and delivered the
draft to the witness Heyman, and that the indorsement
thereon was a forgery. It is insisted by counsel that the
state failed to prove that the abbreviation "Mgr." was
written by the accused. In this connection it should be
noted that the abbreviation "Mang." on the face of the
draft and the indorsement "Mgr." on the back thereof
was treated by the court as material and essential parts of
the instrument. It was assumed, and we think the as-
sumption warranted by the facts in the case, that the draft
is drawn in favor of B. F. Humes, the payee thereof, in a
representative capacity, that of manager, and that to
amount to a forgery it was essential that the indorsement

thereon purports to be by the said payee in the same capacity. The jury were instructed in effect that the letters "Mgr." were an abbreviation of the word manager. The court also in express terms cautioned the jury that in order to convict on the charge in the first count, they must find that the accused wrote the letters "Mgr.," and in order to convict on the charge in the second count, they must find that he knowingly uttered and published said draft, knowing the indorsement thereon, including the letters "Mgr.," to be a forgery. It appears from the bill of exceptions that the accused called at the store of the witness Hyman on the evening of March 10, 1891, for the purpose of purchasing a suit of clothes, assuring the witness that he was expecting a draft from his brother. He returned the morning following and exhibited the draft. The witness insisted on accused identifying himself as the payee of the draft, which he could not do to the satisfaction of the former, who then telegraphed the bank which had drawn the bill, and receiving a satisfactory response he sold accused a suit of clothes for $15 or $16 and took the draft in payment therefor, paying him the difference in money. The witness says in response to a question:

Then we went into the bank and presented the draft, and the cashier said, "Tell him to sign his name," and he signed it B. F. Humes.

Q. Who signed B. F. Humes?

A. The defendant.

Q. Who wrote that "Mgr." under the words B. F. Humes?

A. I never seen him sign that; I saw him sign B. F. Humes, and then I signed the firm's name after it.

Again, on cross-examination he testifies that he has no recollection of seeing accused write "Mgr." on the draft.

The state also produced as a witness J. S. Bennett, one of the regular police of the city, who testified that he had been a book-keeper for nearly forty years, and was expe-

rienced in comparing writings and signatures.    This wit-
ness was asked to compare the signature B. F. Humes in-
dorsed on the draft by the accused with the letters "Mgr."
thereon, and in reponse thereto answered: "Yes, undoubt-
edly they were written at the same time with the same ink
and the same pen."

Aside from this testimony the circumstances of the case
strongly tend to connect the accused with the crime.    He
had been employed by B. F. Humes, who is manager of
a restaurant in the city of Omaha.    It also appears from
his voluntary admissions that he "took the draft from a
letter and indorsed it, and got the money on it."    The
case was fairly submitted to the jury under instructions
which correctly state the law, and their finding is conclu-
sive.    The evidence would have warranted a verdict of
guilty also on the first count of the information, and a
failure to convict on both is a result in no way prejudicial
to the plaintiff in error.  (*Weinecke v. State*, 34 Neb., 14.)
We find no error in the record, and the judgment of the
district court is accordingly

AFFIRMED.

THE other judges concur.