## JOEL C. WILLIAMS V. STATE OF NEBRASKA.

FILED MAY 18, 1897. No. 8660.

1. **Banks and Banking: FALSE ENTRIES: INFORMATION: EVIDENCE: VARIANCE.** A charge in an information of having made, or caused to be made, a false entry in the account of an individual with a bank on its books, is not sustained by proof that such an entry was in an account of such bank with such individual designated in the account as township treasurer.

2. ——: ——: ——: ——: ——. Where, under the circumstances above indicated, the false entry was in the account of the party designated as "treasurer," or simply "Tr.," when such abbreviation evidently means the same as treasurer, the variance is rendered none the less fatal by the mere fact that in such account there was included private money of the individual referred to as treasurer.

ERROR to the district court for Gage county. Tried below before LETTON, J. *Reversed.*

*L. W. Colby,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

RYAN, C.

In the information in this case, filed in the district court of Gage county, Joel C. Williams was charged with

having unlawfully and feloniously made and caused to be made on January 10, 1896, a false entry in the books of the Blue Springs Bank, of which corporation he at the said time was the president. This false entry was of an overdraft of $378.97 in the bank account of J. L. Schlosser, and it was averred in the information that the false entry was made so as to falsely show that J. L. Schlosser owed the bank aforesaid the amount of said overdraft with the intent to deceive the state bank examiner. There was a plea of not guilty. The verdict was guilty and from the judgment pronounced thereon these proceedings in error are prosecuted.

The account charged to have been falsified was that of J. L. Schlosser as an individual. There was a motion to require the state to elect whether a conviction would be claimed for making or for causing to be made the entry indicated. This motion was overruled. There was direct evidence that the entry was actually made by the son of the accused, but there was a refusal to permit the maker of this entry to testify what instructions, if any, the accused gave him with reference to making it. There was permitted to be given in evidence by a non-expert witness his oral statements from memoranda as to items of account shown by the books of the bank and by a passbook, hereinafter more fully described, and therefrom his conclusions were permitted to be stated. In the view which we take of this case it is not necessary to consider these matters to reach the conclusion which under the circumstances must govern its determination. We therefore venture no suggestion on any question except the one which we deem of vital importance, and that question we shall now consider.

It was alleged, as before stated, that the false entry was made, or caused to be made, in the account of J. L. Schlosser. On the trial there was introduced as "Exhibit J," by the state, a book entrusted by the bank to Mr. Schlosser in which the bank authorities made the entries of deposits and checks under an account entitled,

"The Blue Springs Bank, in account with J. L. Schlosser, Township Treasurer." It was shown that this was the counterpart of an account kept on the books of the aforesaid bank with "J. L. Schlosser, Tr." Mr. Schlosser testified that he had been treasurer of Sicily township in 1894 and 1895; that the entry in "Exhibit J" of a credit of $644.80 had been made by the accused. This entry was not made on the books of the bank and in consequence, as the state claimed, there appeared to be an overdraft due the bank until and during January 10, 1896. On his cross-examination Mr. Schlosser testified that he had had another account in the bank than that shown by "Exhibit J," but that this other account was not in existence while the bank was going; that while the bank was running Mr. Schlosser banked the money as his own; that in January, 1896, witness had no account with the bank other than that shown by "Exhibit J," and that he had never had an individual account with the bank after he opened the account shown by "Exhibit J," which was in January, 1894. This witness said he deposited his own and the township money in the account evidenced by "Exhibit J." In the course of his cross-examination in this connection there was the following testimony given by Mr. Schlosser:

Q. Did you put your individual money in with the township money?

A. I put it all in together because you can't bank as township treasurer.

Q. Have the attorneys in this case told you that you were committing a crime if you put any money in the bank as an officer, and isn't that the reason you are swearing this way before this jury?

A. They have.

Q. That is the reason that you are swearing that it is your individual money?

A. It is.

Q. Isn't it a fact, a part that you put in there was money received from Sicily Creek township?

A. Yes, sir.

Q. How much did you put in there? What amount was so received?

A. I can't tell.

Q. Can you tell one single item?

A. I don't know that I can.

Q. Take the book and find a single dollar.

A. I don't know as I can.

Q. Take the book and find a single dollar, one dollar, ten dollars, or ten cents, any place; tell the jury where it is.

A. I can't, because I had money of my own and township money and banked it all together.

If this account had been opened as an account with J. L. Schlosser, as township treasurer of Sicily township, and, after all the funds of the township had been drawn out the account represented only personal transactions between Schlosser and the bank, it might be that, with a certain degree of accuracy, the account could be described as that of J. L. Schlosser. This, however, was not the condition of the account on January 10, 1896, when it was charged that the false entry was made in the account of Mr. Schlosser. The only entry shown on the date indicated was in the book of the bank in which the account was described as that of J. L. Schlosser, tr. The pass-book (Exhibit J) purported to contain the same account and this was described as an account of the bank with "J. L. Schlosser, Township Treasurer." This coincidence shows that the abbreviation "Tr." was a substantive descriptive term with reference to the account itself, and not a mere description of the person with whom the bank was transacting business. The crime charged was the making or causing to be made a false entry in the books of the bank for the purpose of deceiving the bank examiner. The description of the particular account alleged to have been tampered with was of the essence of the charge made. It was not as though the crime had been the embezzlement of funds of J. L. Schlosser en-

trusted to the bank, for then a substantive matter of description would have been the person of whom the money was embezzled, and not how such person was described on the books of the bank. The fact that in the account of J. L. Schlosser as treasurer there were mingled some of Mr. Schlosser's private funds did not tend to make the designation of the account as a treasurer's account any the less accurate. In *Prehm v. State*, 22 Neb., 673, the information charged that the defendant "did unlawfully and feloniously pretend to one James Wilson that five worthless drafts were each worth the sum of $100, by which said false pretenses the said Al. A. Prehm then and there did obtain in exchange for said five worthless drafts from the said Wilson one bay gelding," etc., "the aggregate value being of the sum of $250," etc. The instruments referred to as drafts were alike, except that they were differently numbered, otherwise, each was in this language:

"OFFICE E. DURAND,

"ESTEY ORGAN DEPOT, ST. JOSEPH, MISSOURI.

"This draft will be received by me at the Estey Organ depot in St. Joseph, Missouri, for one hundred dollars in payment for any style of Estey organs the holder of this may select at catalogue prices. The balance of the organ to be paid in cash or approved paper bearing ten per cent interest. E. DURAND."

It was held that the designation of the above instrument as a draft was a misnomer, and as the evidence showed that the five instruments on which the credit was obtained were of the above form, there was held to be a fatal variance between the averments of the information and the proofs offered to sustain them. To justify this conclusion there were cited three adjudicated cases, of which the first was *Lancaster v. State*, 9 Tex. App., 393, in which the defendant had been convicted upon an indictment charging that on a certain day he had committed the crime of larceny by stealing from the owner thereof $142, current money of the United States. The

proof was of the theft of checks of various denominations instead of money, and this variance was held to be fatal. The second case cited was *Grummond v. State*, 10 O., 510, in which the defendant was indicted for stealing bank bills. The proof showed that the stolen property consisted of orders of the Ohio Railroad Company, and this variance was held to be fatal. The third case was *State v. Handy*, 20 Me., 81. The indictment was for the forgery of an acquitance or discharge for the sum of $48. On its face the order was for $48. On its back, however, there was an order for the further sum of $1, and it was held that this constituted a variance between the allegations and proofs. The same principle was applied in *Haslip v. State*, 10 Neb., 590, as to the necessity of conforming the proofs to the averments of the information. In line with the above authorities and illustrative of the importance attached to an abbreviated descriptive term, following the name of the individual, is the more recent case of *Roush v. State*, 34 Neb., 325, the holding in which as to the propositions indicated is fairly reflected in the third paragraph of the syllabus, which is in the following language: "In an information for knowingly uttering and publishing a bank draft with the forged indorsement of the payee thereon as follows, 'B. F. H., Mgr.,' *held,* that the abbreviation aforesaid is a material and essential part of the indorsement and must be proved like any other material allegation of the information."

We are constrained to believe that in the case at bar there was such a variance between the description of the account alleged to have been falsified and the account introduced in evidence that the judgment of the district court cannot be sustained and it is therefore reversed.

REVERSED AND REMANDED.