MEYERS & COX, APPELLEE, v. WESTERN UNION TELEGRAPH
COMPANY, APPELLANT.

FILED JUNE 5, 1915. No. 18130.

1. **Appeal: WITNESSES: COMPETENCY: DISCRETION OF COURT.** The determination of the competency of a witness to testify as to his opinion of the value of personal property, which is the subject of controversy, rests largely in the discretion of the trial court, and a ruling thereon will not be disturbed on appeal except when clearly erroneous as a matter of law.

2. **Evidence: ADMISSIONS: CONCLUSIVENESS: MARKET VALUE.** Where the reasonable market value of a herd of cattle is an issue in an action, and one member of a copartnership, which is a party to the action, testifies as to his best judgment as to the market value of the cattle, such testimony is not such a positive statement of the issuable fact as will constitute a conclusive admission thereof and preclude the consideration of other competent evidence.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Affirmed.*

*Brogan & Raymond,* for appellant.

*Gurley, Woodrough & Fitch, contra.*

FAWCETT, J.

In 1909 the plaintiffs, a copartnership doing business as Meyers & Cox, were engaged in buying cattle for feeding and fattening purposes in their yards at Mapleton, Utah. One L. J. Thomas was in their employ as a cattle buyer in and about American Falls, Idaho, at which place one L. L. Evans was offering for sale a large number of steers at $38 a head. This offer was known to Cox and Wagner, two of the members of the plaintiff firm. On November 5 Wagner presented to defendant, at Springville, Utah, for transmission to Thomas, at American Falls, this message: "Cox says not buy Evans cattle." Through some error in transmission the word "not" was omitted, so that when delivered to Thomas the message read: "Cox says buy Evans cattle." Acting upon this telegram as delivered

to him, Thomas bought for plaintiffs 418 head of the
Evans cattle, paying therefor $15,789.65, approximately
$38 a head. After the purchase was made the cattle were
"cut out" of the Evans herd and trailed to Malad, Utah,
where they were pastured for a few days and then shipped
by rail to Mapleton. They were weighed for the first time
at Salt Lake City, weighing in the aggregate 416,000
pounds. Plaintiffs instituted this action in the district
court for Douglas county to recover the alleged difference
between the purchase price and market value, and also
the cost of shipment and extra feed and accommodations
for the cattle, limiting their claim for recovery to $1,999.
The trial court limited the inquiry to the difference be-
tween the market value and the purchase price. The jury
returned a verdict in favor of plaintiffs for $2,205.70, upon
which judgment was entered, and defendant appeals.

The errors assigned are: "(1) The trial court erred in
admitting in evidence the opinion of the witness Parsons
as to the value of the cattle in suit, without requiring a
showing as to his actual knowledge of the Evans cattle,
or confining his opinion to the kind or class of cattle to
which the particular cattle in question belonged. (2) It
was not competent for the jury to disregard the testimony
as to value of the plaintiff Wagner." It is urged by de-
fendant that it is error to admit in evidence an opinion
as to the value of specific property, without first requir-
ing a showing of actual knowledge of the property in ques-
tion. As an abstract proposition this contention is sound,
but defendant is seeking to make too literal an application
of the rule. In order to make the testimony of the wit-
ness Parsons competent, it was not necessary that plain-
tiffs show an actual knowledge by him of the particular
418 head of cattle involved. The evidence shows Mr. Par-
sons to have been a very extensive dealer in Utah and
Idaho range cattle for many years. His dealings as such
dealer ran from 2,000 to 40,000 head per annum. He testi-
fied that he was familiar with most of the stock cattle in
Utah and southern Idaho; that he was as familiar with
the general run of cattle up there as he was with his own

herd; and with reference to the Evans herd he testified: "Q. Do you know what the fair and reasonable market value of about 400 head of Evans' steer cattle were worth per head at American Falls, Idaho, on November 5th, 1909? A. Yes, sir. Q. You may state what that fair and reasonable market value per head was. What was the fair and reasonable market price of these cattle at American Falls, Idaho, on November 5, 1909, as near as you can give it? A. I think that the outside price for the cattle would have been $33 per head." We have frequently held that the determination of the competency of witnesses to testify as to their opinion of the value of real estate or personal property, which is the subject of controversy, rests largely in the discretion of the trial court, and that a ruling thereon will not be disturbed on review except when clearly erroneous as a matter of law. In the light of this well-settled rule, the trial court did not abuse its discretion in receiving the testimony complained of.

The second assignment is based upon testimony given by Mr. Wagner, a member of the plaintiff firm. He was interrogated as to the market value of cattle at Springville, and answered that he was familiar with the market in general; that the market value of cattle at American Falls "would be the same in proportion as it would in Salt Lake. Q. What would the difference be, if anything? A. The difference in freight. Q. So the market value of cattle, excluding the freight, would be the same at American Falls as it would be at Springville, Utah? A. Yes, sir; just the same. Q. What was the market value of cattle at that time? Just give us your best judgment as to what the market value of cattle was at that time, the price per 100 pounds. A. I should say 3½ cents a pound would be a good price for those cattle. Q. Does the market value of cattle vary from time to time? A. Not a great deal on feeders in the field as a rule. Q. You say you saw these cattle at the time they were weighed? A. Yes, sir. Q. Can you state what the market value of these particular cattle was? A. About 3½ cents per pound."

Assuming, as the parties did, that the cattle weighed an average of about 1,000 pounds a head, if the testimony of Mr. Wagner is to be held conclusive as an admission by the plaintiffs, then the verdict was excessive. Defendant contends that this is the rule, and that the rule should be applied to the testimony of Mr. Wagner, and a number of authorities are cited to sustain the contention. We are unable to concur in this view. The rule that, where a party to an action testifies positively to a fact which amounts to an admission of the contention on the other side, it should be given the same effect as an admission in a pleading, is not applicable to the situation in the case at bar. Here the question to be decided is: What damage has the plaintiff firm suffered by reason of the error on the part of the defendant in the transmission of its message? That damage, under the ruling of the district court, was to be determined from the difference in the actual market value of the cattle at the time they were purchased by the plaintiffs' agent and the amount which plaintiffs had to pay. There being no way by which that difference could be determined with certainty, it became necessary to resort to opinion evidence, and witnesses, possessing a general knowledge of range cattle in the locality where the transaction occurred, were called upon to give their opinion as to the market value of these cattle. The fact that one member of the firm testified that his "best judgment as to what the market value of cattle was at that time" was 3½ cents a pound, is not such a positive statement of an issuable fact as should be held to bind the copartnership, or even the witness himself. Having given his opinion as to the value, if the testimony of other competent witnesses, and notably the testimony of so experienced an operator in that country as the witness Parsons, shows that he is mistaken in his estimate, we do not think any court should hold that his mistaken opinion should be held to constitute a conclusive admission, binding not only the witness, but his copartners as well. An examination of the cases cited by defendant shows that the cases relied upon are not cases

of testimony of a party as to an opinion, but that they are cases in which the testimony as to a fact in issue was positive, and not a mere opinion of the witness. We must therefore hold against the defendant on its second assignment.

Our holding upon the two assignments urged leaves the question one of fact only, which was one purely for the jury. Finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.