## Commonwealth v. Fenwick.

(Decided November 13, 1917.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Appeal by Commonwealth—Review.—The Commonwealth can appeal, in criminal cases, only from decisions of the trial court adverse to it. Hence, the question of the sufficiency of an indictment cannot be reviewed, where a demurrer thereto was overruled; or, where, at the close of all the evidence, demurrer was offered and not objected to and not passed upon by the trial court.

2. Criminal Law—Forgery—Trial—Question for Jury.—In a prosecution for forgery, the evidence showing that accused, within a short time after requesting a loan and offering as sureties upon his note, Mary B. Conrad and Will Conrad, returned with the note signed with pencil, by Mary B. Conarden and Will Conardes, surrendered and received the proceeds thereof, knowing that same was a forgery, defendant was guilty of uttering a forged instrument, as denounced by section 1189, Kentucky Statutes, and it was error for the court to direct a verdict for the accused.

3. Forgery—Elements—Uttering.—Uttering is offering a forged instrument, knowing it to be such, whether such offer is accepted or not, with a representation, by words or actions, that it is genuine, and with an intent to defraud.

4. Forgery—Elements.—Forgery is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability; and includes the unsuccessful attempt as well as the accomplished fraud.

5. Forgery—Fictitious Names.—Forgery may be as well as of a mere fictitious name as that of a real person.

6. Forgery—Likelihood to Deceive.—It is immaterial whether the forged signature so resembles the genuine as to be likely to deceive; the forger cannot claim immunity because the person cheated would not have been deceived, if he had been vigilant or careful.

CHARLES H. MORRIS, Attorney General; C. H. SMITH and H. A. BIRKHEAD for appellant.

R. P. ROBERTSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Certifying the law.

The defendant and appellee, Will Fenwick, was indicted by the grand jury of Daviess county for uttering a forged note; and, upon a trial, was acquitted upon a directed verdict, ordered by the court at the completion of the evidence for the Commonwealth.

The Commonwealth has appealed, as it may do under sections 335 and 337, Criminal Code, for a certification of the law; and insists that it is important, to the correct and uniform administration of the criminal law, that this court determine the following questions:

First, whether the indictment was good upon demurrer.

Second, whether the defendant, after a plea of not guilty, could, at the close of the Commonwealth's evidence, demur to the indictment; and

Third, whether or not the court erred in directing a verdict for the defendant.

1. The first question urged upon us is not here, since the court overruled the demurrer to the indictment; and the Commonwealth can appeal only from decisions of the trial court which are adverse to it. This question was recently decided by this court in the case of Commonwealth v. Brand, 166 Ky. 753, wherein the authorities were fully reviewed, and it is not, therefore, necessary to again discuss the matter.

2. It is insisted for the Commonwealth that, after a plea of not guilty has been entered, the jury sworn, and evidence heard, the defendant may not question the sufficiency of the indictment by a demurrer; but we are likewise without authority to consider that question, because the attorney for the Commonwealth did not object to the filing of the demurrer and did not present to the trial court the question of defendant's right so to do, and, so far as the record discloses, the court did not consider or decide the question. Commonwealth v. Brand *supra.*

3. The evidence, introduced by the Commonwealth and held by the court insufficient to support the indictment, is in substance as follows:

In August, 1916, the defendant applied to the United States National Bank for a loan of $25.00, and proposed to its president, Mr. E. T. Franks, that he would execute his note for the amount with Mary B. Conrad and Will Conrad as sureties. Thereupon, Mr. Franks prepared a note for $25.00, payable to the bank in ninety days, to which he signed and witnessed defendant's name, by mark, and delivered the note to defendant to have it signed by the proposed sureties. In a short time thereafter, defendant presented this note to Mr. Franks with two names signed upon it just below his signature. The surnames of these signatures are not plainly written, but are probably spelled Conarden or Conardes. Mr. Franks

approved the note and defendant received the proceeds thereof from the bank, but Mr. Franks did not remember that the defendant said anything to him about the note at the time it was delivered to and discounted by the bank, but testified that when defendant presented the completed note, he did not examine the signatures of the sureties carefully, but thought they were the signatures of Mary B. Conrad and Will Conrad, and approved the note; that he was familiar with the signatures of Mrs. Conrad and Will Conrad; that Mrs. Conrad was an old German lady and could write only with a pencil and poorly, and that Will Conrad could not write very well; that after learning that Mrs. Conrad and Will Conrad denied having signed the note, he made a careful examination of the note and discovered that they had not signed it, but that the name, Mary B. Conarden upon the note so nearly resembled Mrs. Conrad's signature that he did not discover it was not her signature until he examined it closely and compared it with her signature upon other notes in the bank. The names, Mary B. Conarden and Will Conarden upon the note are written with a pencil and the surnames are very poorly and indistinctly written. That neither Mary B. Conrad nor Will Conrad signed the note is thoroughly established, but that the names signed to the note were crude efforts to forge their names to the note is equally well established, as is the fact that the defendant uttered the paper and received the money thereon, with the knowledge that it was a forgery; and that there is no such person as Mary B. Conarden or Will Conardes living in Daviess county or known to the sheriff, or deputy sheriff, or county clerk of the county.

This evidence clearly authorized the submission of the case to the jury, and the court erred in directing a verdict for the defendant.

Section 1189, Kentucky Statutes, under which the indictment was drawn, provides:

"If any person . . . shall tender in payment, utter, vend, exchange, barter or demand to have exchanged for money, any such forged, erased, altered or counterfeited bill, note, draft, check or certificate of deposit, or the indorsement thereon, knowing the same to be forged, counterfeited, erased or altered, he shall be confined in the penitentiary not less than two nor more than ten years."

The indictment charges the offense denounced by the statute and describes with minute particularity the note,

its forgery and utterance by the defendant, knowing it to be such, every allegation of which is sustained by the proof; and the defendant is held by the court to be immune from punishment, not because the Commonwealth failed to prove that he committed the crime as charged, but because, in the opinion of the court, the forgery was so crude that it ought not to have deceived any one. This, fortunately, is not the law. Neither the negligence, nor the vigilance of the person defrauded or upon whom the attempt is made, affects the criminality of the act of one who forges or utters a forged paper of apparent legal efficacy, and it would be indeed an anomaly in the law if the guilty party could urge as a defense or demand immunity simply because he was lacking in skill, or that his victim was lacking in experience or prudence, or unsuspicious and therefore not vigilant.

In 19 Cyc: 1388, the offense is defined thus:

"Uttering is offering a forged instrument, knowing it to be such, whether such offer is accepted or not, with a representation, by words or actions, that it is genuine, and with an intent to defraud; and it is a public offense."

As the acceptance is immaterial and constitutes no part of the offense, the crime is committed, even though the person, to whom the forged instrument is offered, discovers the forgery from the clumsiness of its execution or the behavior of the one offering it, and, for such reason, or any other, refuses to be defrauded.

It is, therefore, patent that whether or not the forgery was such as likely to deceive is wholly immaterial, so far as the utterance is concerned.

This is also true with respect to the forgery, as will be seen from the definition of that crime in Bishop's Criminal Law, vol. 1, sec. 572, as follows:

"Forgery is a species of common law cheat, which early was separated from the rest under this distinctive name. And it includes as well the unsuccessful attempt as the accomplished fraud. It is the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficiency, or the foundation of a legal liability."

In Barnes v. Commonwealth, 19 R. 803, this court said:

"It is a forgery, though the similitude of the signature with the genuine be not such as would likely deceive."

So also: "It is likewise a forgery for one to sign a fictitious name to a writing which, if genuine, would be

of apparent legal efficacy.'' Bishop's New Criminal Law, vol. 1, sec. 543; and in subsection 2, section 572, of the same volume:

"Since a writing which falsely appears to be of efficacy is a symbol or token adapted the same as a genuine one to influence the mind contemplating it, the forgery may be as well of a mere fictitious name as of real persons.''

In Roberson's Criminal Law, vol. 1, sec. 393, it is said:

"Where the forged paper is such that it might, from its nature, and the course of business, deceive or mislead, to the prejudice of another person, the crime of forgery is complete. It is sufficient if the resemblance between the forged and genuine instrument is such as to deceive a person of ordinary observation or business capacity, although experts or persons of experience could not be deceived by it. No matter how defective may have been the forgery, it is enough if there is a possibility of fraud. And it is no defense that, by close observation, the victim could have detected the forgery. It does not lie in the mouth of the forger to claim immunity for his crime because, if the person he imposed upon had been vigilant or careful, he would not have been deceived. Misspelling of the name forged, or writing it in such a manner and with so little resemblance to the signature forged, as not to deceive a careful person, does not prevent the crime of the writer from being forgery. It is not necessary that the forgery so resemble the genuine signature as to mislead one acquainted therewith; if there be an intent to deceive, and a possibility of deceiving one who does not know the genuine signature, it is sufficient. Thus, a conviction was held proper where the name attempted to be forged was "Thweat," but the forged instrument had it "Theet." And where the name of the payee in a bill was "Enos Randole," and the prisoner, representing himself to be that person signed the bill as "Enos Randell," the variance is not fatal.''

Likelihood to deceive, as an element of forgery, depends not upon the skill with which the forgery is executed, but upon the character of the instrument forged. It must be a writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability; but, whether the similitude of the signature with the genuine is such as would be likely to deceive is wholly immaterial.

The judgment of the lower court must stand, but the clerk will certify this opinion as containing the law of the case.