R. T. COOPER V. STATE OF NEBRASKA.

FILED JULY 19, 1932.   No. 28253.

*F. L. Bollen,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before Goss, C. J., Rose, Dean, Eberly and Paine, JJ., and Dickson and Tewell, District Judges.

Dickson, District Judge.

The plaintiff in error, R. T. Cooper, hereinafter referred to as the defendant, was convicted of forgery in the district court for Saline county, and was sentenced to the penitentiary. To reverse this judgment he prosecutes proceedings in error in this court.

The facts upon which the state relied for a conviction are not in dispute. From the record it appears that the defendant was in the employ of Black Bros. Flour Mills Elevator, at De Witt, with authority to purchase grain and issue checks of Black Brothers, in payment therefor. The five checks set forth in the different counts of the information were issued by him as agent for Black Brothers. These checks on their face purported to have been issued for grain purchased from the payees by the defendant, and in payment thereof. Defendant admits in the record that he, without the knowledge, consent, authority or approval of the payees, wrote their names on the backs of the checks

and deposited them in the Farmers & Merchants Bank of DeWitt to his credit. The evidence shows that he had not, in fact, purchased the grain represented by the checks. The defendant offered no evidence in explanation of his admitted acts of writing the names of the payees on the checks, other than that they plainly showed to be the act of himself, and not the act of any other person. And, if an offense has been committed, it was not forgery as charged in the information. We are asked to reverse this case for the following reasons: (1) Because the facts set forth in the several counts of the information do not charge him with an offense punishable by the laws of this state. (2) The indorsements on the backs of said five checks were not set out in the information, and were not offered or admitted in evidence. (3) The court erred in giving instructions one, four and fourteen on its own motion. (4) Error in refusing to give instruction numbered six requested by defendant. (5) The verdict of the jury is not sustained by sufficient evidence. For the purpose of convenience, assignments of errors one and two will be considered together, and the others in their order.

The information contained five separate counts; count one charges in substance that the defendant, on or about the 19th day of December, 1928, had in his possession a certain check of Black Brothers for $73.60 payable to Alfred Sobotka. The information contains a copy of the check, and charges in part that the defendant did "falsely, knowingly, unlawfully and feloniously, and with intent to defraud, forge and counterfeit the name of Alfred Sobotka on the back of said check, and did then and there in said county, with intent to defraud, falsely, fraudently and feloniously publish and utter said check with said forged indorsement of said name thereon, as true and genuine, although it was false and counterfeit, as he, the said R. T. Cooper, real name unknown, well knew." The other four counts are similar and of the same legal force and effect, so only count one need be considered. None of the counts sets forth the indorsements on the backs of the checks. The

information charges in each count that the defendant forged the name of the payee on each check, and published and uttered the same as true and genuine. It will be observed that the charge is not the forgery of a check; it is the making of a false indorsement of the payee of a check. This is forgery. 26 C. J. 921. It was proper, but not necessary, to set forth in the information a copy of the indorsements on the backs of these checks; the purport was sufficient, and the information is not defective for failure to do so. Comp. St. 1929, sec. 29-1503; *Davis v. State,* 58 Neb. 465; 26 C. J. 939.

The contention that the information is not sufficient to inform the defendant of the offense charged is without merit. The information charges a violation of section 28-601, Comp. St. 1929.

It is urged that the conviction cannot be upheld because the indorsements on the backs of the checks were not offered in evidence, and that the offer and receipt of the checks in evidence did not carry the indorsements thereon. The record discloses that at the opening of the case a stipulation was entered into between the state and the defendant that the checks set forth in the several counts of the information were written by the defendant, and that the names of the payees on the backs thereof were all written thereon by the defendant, and without the knowledge, consent or authority of the payees. This was an admission of a false indorsement, an essential element of forgery. Following the stipulation the state offered the checks in evidence. Under the stipulation no proof of the indorsements was necessary, and the checks being offered and received in evidence, the indorsements were properly before the jury; and the defendant is estopped to complain of the failure to offer the indorsements. The rule in such a case is stated in 4 C. J. 706, as follows: "A party is estopped to complain of the judgment for insufficiency of evidence to sustain it, where he admitted the existence of the facts which such evidence would have established by stipulation."

It is contended that the court erred in giving instructions one, four and fourteen. Instruction numbered one is not subject to criticism. By this instruction the jury are informed by the court of that part of our criminal statute the defendant is charged with violating; and the material allegations of the several counts of the information. No possible error could be predicated on the giving of this instruction.

Instruction numbered four, when considered in the light of, and in connection with, the stipulation which eliminated evidence of the signing of the names of the payees by the defendant, and when considered in connection with instructions numbered eleven, twelve and fourteen, cannot be said to be erroneous. The defendant stipulated that he had signed the names of each of the payees on the backs of the checks, and having so stipulated he cannot now complain because the court, in its instructions, relieved the state from this burden. The state was not required to make further proof, nor was the court to treat in its instructions such fact as in controversy, under the rule stated in 22 C. J. 339: "An agreed statement of fact or other stipulation by counsel, as to matters of fact within the scope of their professional functions binds the party as a judicial admission." Again, "A judicial admission is conclusive on the party by whom it is made or to whom it is attributable." 22 C. J. 421. See *Meyers & Cox v. Western Union Telegraph Co.*, 98 Neb. 471.

Giving the intended legal effect to the stipulation, the intention of the defendant in doing the acts charged became the material element for the jury's consideration. On that question the jury were properly instructed, not only by instruction number four, but by instructions eleven, twelve and fourteen; and when taken and considered together, and in connection with instruction number one requested by defendant, which recognizes the correctness of the rule, as stated by the court in its instructions, it cannot be said that the trial court erred in giving any of the complained of instructions.

At first blush, instruction numbered six requested by defendant would seem to be a correct statement of the law; but a careful consideration convinces the writer to the contrary. This instruction omits the essential elements of forgery—"Forgery is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." *Commonwealth v. Fenwick*, 177 Ky. 685—and substitutes therefor a proposition of law that it is not forgery to make a false indorsement of a payee of a check, "unless there is a similitude or an attempt at similitude of the genuine signatures of such persons, and the resemblance of such signatures must be such as would be reasonably calculated to mislead or deceive." This required a degree of proficiency on the part of the defendant not necessary to commit forgery. In other words, the instruction advised the jury that, unless the defendant was able to write, and did write, the signatures of the payees in such a way as would be reasonably calculated to mislead or deceive the person accepting the checks, the jury should find the defendant not guilty. Such a contention is preposterous, and would make the crooked straight and the straight crooked. Such a rule might be applied in a civil case under certain conditions. The making of a false indorsement of a check would not transfer the title thereto, and would be forgery if done with the intent to defraud. And similitude, or lack of similitude, would not be an element of the crime; and would not be a material inquiry. To say that the indorsements must be made in such a way as to mislead or deceive does not state the correct rule. "The essence of forgery is the making of a false writing with the intent that it shall be received as the act of another than the party signing it." *Goucher v. State*, 113 Neb. 352.

It is insisted that requested instruction number six finds support in *Marshall v. State*, 116 Neb. 45. In that case the question here involved was not presented or considered; and the rule there stated is not in conflict with the rule

hereinafter stated. The question involved in the *Marshall* case was one of variance between the name signed to the copy of the forged note set out in the information and the name signed to the forged note offered in evidence; not the similarity of a written signature with that of the genuine signature. This case is easily distinguished from the *Marshall* case, and presents an altogether different rule when applied to the facts in the case under consideration. The authorities at first glance would seem to be divided; but under statutes like ours the holdings may be said to be uniform. And the correct rule, in a case like this, seems to be: "Nor is it requisite that the writing should bear any resemblance to that of the person whose writing it purports to be." 26 C. J. 908. In *Commonwealth v. Fenwick*, 177 Ky. 685, L. R. A. 1918B, 1189, the court carefully considered and discussed this question, and the conclusions reached by Judge Clarke meet with our approval, and are not in conflict with *Marshall v. State, supra.* In reviewing this case Judge Clarke said:

"The indictment charges the offense denounced by the statute and describes with minute particularity the note, its forgery and utterance by the defendant, knowing it to be such, every allegation of which is sustained by the proof; and the defendant is held by the court to be immune from punishment, not because the commonwealth failed to prove that he committed the crime as charged, but because, in the opinion of the court, the forgery was so crude that it ought not to have deceived any one. This, fortunately, is not the law. Neither the negligence, nor the vigilance of the person defrauded or upon whom the attempt is made, affects the criminality of the act of one who forges or utters a forged paper of apparent legal efficacy, and it would be indeed an anomaly in the law if the guilty party could urge as a defense or demand immunity simply because he was lacking in skill, or that his victim was lacking in experience or prudence, or unsuspicious and therefore not vigilant. In 19 Cyc. 1388, the offense is defined thus: 'Uttering is offering a forged instrument, knowing

it to be such, whether such offer is accepted or not, with a representation, by words or actions, that it is genuine, and with an intent to defraud; and it is a public offense.'

"As the acceptance is immaterial, and constitutes no part of the offense, the crime is committed, even though the person, to whom the forged instrument is offered, discovers the forgery from the clumsiness of its execution or the behavior of the one offering it, and, for such reason, or any other, refuses to be defrauded. It is, therefore, patent that whether or not the forgery was such as likely to deceive is wholly immaterial, so far as the utterance is concerned.

"This is also true with respect to the forgery, as will be seen from the definition of that crime in Bishop, New Criminal Law, sec. 572, as follows: 'Forgery is a species of common-law cheat, which early was separated from the rest under this distinctive name. It includes as well the unsuccessful attempt as the accomplished fraud. It is the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.'

"In *Barnes v. Commonwealth,* 101 Ky. 556, this court said: 'It is a forgery, though the similitude of the signature with the genuine be not such as would likely deceive.'

"So also: 'It is likewise a forgery for one to sign a fictitious name to a writing which, if genuine, would be of apparent legal efficacy.' Bishop, New Criminal Law, sec. 543; and in subsection 2, sec. 572, of the same volume: 'Since a writing which falsely appears to be of efficacy is a symbol or token adapted the same as a genuine one to influence the mind contemplating it, the forgery may be as well of a mere fictitious name as of a real person's.'

"In Robertson, Criminal Law, sec. 393, it is said: 'Where the forged paper is such that it might, from its nature, and the course of business, deceive or mislead, to the prejudice of another person, the crime of forgery is complete. It is sufficient if the resemblance between the forged and genuine instrument is such as to deceive a person of ordi-

nary observation or business capacity, although experts or persons of experience could not be deceived by it. No matter how defective may have been the forgery, it is enough if there is a possibility of fraud. And it is no defense that, by close observation, the victim could have detected the forgery. It does not lie in the mouth of the forger to claim immunity for his crime because, if the person he imposed upon had been vigilant or careful, he would not have been deceived.' "

As further supporting this rule, see *Schmidt v. State*, 169 Wis. 575, and *State v. Chance*, 82 Kan. 388.

Error is sought to be predicated on the fact that the information does not follow the statutory language, in this, that the defendant is charged with forging the names of the payees of the checks, instead of forging their signatures. The law justifies the use of words equivalent to, or inclusive of, the statutory language, provided the words used include the full signification of the statutory words. 31 C. J. 704-707; *Whitman v. State*, 17 Neb. 224; *Peterson v. State*, 64 Neb. 875.

"The court will give the words used in the information their ordinary and commonly accepted meaning, and, when viewed in this light, if the words employed mean the same thing as those found in the language of the statute denouncing the offense, the information will be upheld." *Smith v. State*, 72 Neb. 345. In this case the use of the word "Name" in the information, instead of "Signature," was not only justified, but was required to express a violation of our statute. To say that he forged the signatures of the payees, instead of saying that he forged the names of the payees, on the backs of the checks is like saying: "McCarthy come out, or come out McCarthy." They mean the same thing and could not have been misunderstood or given a different meaning.

This disposes of all the alleged errors that merit consideration by a reviewing court, save the question of the suffiiciency of the evidence to sustain the verdict. The evidence conclusively establishes the guilt of the defendant.

To read the evidence is to be convinced of the defendant's guilt. To here review the same would answer no good purpose, and would unnecessarily extend this opinion. The record discloses that the defendant had a fair trial, and the judgment of the district court is

AFFIRMED.