CLENDENEN W. MITCHELL v. STATE OF NEBRASKA.

273 N. W. 806

FILED JUNE 11, 1937. No. 30084.

R. O. *Reddish,* for plaintiff in error.

*Richard C. Hunter, Attorney General,* and *Francis V. Robinson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

The plaintiff in error, hereinafter called defendant, was informed against for forgery by falsely and feloniously altering a promissory note belonging to one Robert O. Jones, with the intent to defraud Jones. Upon trial a verdict of guilty was returned against defendant, and from the order of the trial court overruling his motion for a new trial, he prosecutes error.

There is practically little dispute in the evidence. Defendant was secretary-treasurer of the Northwest Financial Service, Inc., hereafter referred to as the "Finance Company." This was a corporation engaged partly in the business of handling and investing money belonging to others and entrusted to the Finance Company for that purpose. Defendant was also the secretary-treasurer and managing officer of the Northwest Agricultural Credit Corporation, an inactive but existing corporation, hereinafter referred to as the "Agricultural Corporation," which was formerly engaged in the business of rediscounting live stock paper to the Federal Intermediate Credit Bank.

Fred A. Hood was president of the Finance Company from 1925 to the spring of 1933. Hood had induced R. O. Jones to place with the Finance Company the sum of $1,200 on January 31, 1928, to be invested by the company on "monthly payment contracts." This written contract further provided that these "monthly payment contracts" are "always to be subject to the approval of the party of the first part (Jones) and belong to him exclusively, and will be held in trust by the party of the second part for collection." And it was further provided by the terms of this written contract that the sum of $1,200 so entrusted to the

Finance Company might be supplemented at any time and in any amount as party of the first part (Jones) might determine, and that such additional sums should come under the same provisions as this contract. It also appears that this investment was later increased to $5,500, and, in addition, it was orally agreed that Jones' money might be loaned on automobiles, furniture, and different kinds of merchandise contracts providing for payment on the monthly basis. It appears that on June 27, 1932, defendant made and delivered to the Finance Company, as payee, a promissory note for $490 in usual form, payable in three months after date, with interest, which was signed by "Northwest Agr. Credit Corp. (Signed) by C. W. Mitchell, Secy-Treas." On the same day, by an assignment in writing purporting to be executed by the Finance Company by the defendant, this note was assigned to the "Jones Trust," and reported thereafter from time to time as an investment made in Jones' behalf. All this was done without knowledge or authority from any of the other officers of the Finance Company, or the officers of the Agricultural Corporation, and, in like manner, the defendant took and received from the Jones funds the sum of $490 which he appropriated to his own private use. This $490 investment was not in conformity with the controlling contract already referred to. Some time thereafter the situation came to the knowledge of the attorney for the Agricultural Corporation, who was also a stockholder thereof, and who immediately challenged the legality of the entire transaction involving the $490 note, as it had been carried out by defendant. Thereupon the defendant, without knowledge of, or authority from, R. O. Jones, the owner of the instrument, and without knowledge of, or authority from, any other of the officers of the Finance Company or of the Agricultural Corporation, and without the Agricultural Corporation ever receiving any part of the consideration of the $490 note, by erasures and additions, altered and changed the signature as it originally appeared on the note, viz., from "Northwest Agr. Credit Corp. (Signed) by C. W. Mitchell, Secy-

Treas." to "Northwest Agr. Credit Co. (Signed) by C. W. Mitchell, C. W. Mitchell."

It appears to be admitted that the "Northwest Agr. Credit Co." has no existence, and, as a name, is fictitious.

We are committed to the view that "The signing of a fictitious name of a person to an instrument which is the subject of a forgery, with an intention to defraud, is a false and fraudulent making of such instrument, and constitutes the offense of forgery." *Randolph v. State,* 65 Neb. 520, 91 N. W. 356.

Our statutes, in effect, provide that forgery is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability. *Cooper v. State,* 123 Neb. 605, 243 N. W. 837; *Uerling v. State,* 125 Neb. 374, 250 N. W. 243; *Roush v. State,* 34 Neb. 325, 51 N. W. 755.

Here, the instrument alleged to have been feloniously altered was a negotiable instrument. On the subject of materiality of alteration, our negotiable instruments act provides: "Any alteration which changes * * * the number or the relations of the parties, * * * or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." Comp. St. 1929, sec. 62-807. See, also, 8 C. J. 728.

Our statute quoted best expresses the common law on this subject.

"Any change in the personality, number, or relations, of the parties to an instrument which gives the instrument a different legal effect is material." 2 C. J. 1214. See, also, *Montgomery v. Crossthwait,* 90 Ala. 553, 8 So. 498; *Haskell v. Champion,* 30 Mo. 136.

"To sustain an indictment for forgery it is generally necessary that the instrument alleged to be forged should be one which would expose a particular person to legal process. Apparent legal efficiency, however, is enough. It is not necessary that such suit should have in it the elements of ultimate legal success. It is enough if the forged in-

strument be apparently sufficient to support a legal claim." 2 Wharton, Criminal Law (12th ed.) 1190, sec. 887. But, in the instant case, the forgery of the original instrument is not relied upon. The conviction must be sustained, if at all, on the fact of alteration.

The rule clearly established by the authorities, applicable to forgery as defined by our statute, is: "It is forgery fraudulently to alter any part of an instrument when the alteration is capable of working injury to another. Thus, it is forgery to alter the dates, names, or any other material parts of an instrument when the alteration gives it a new operation. Consequently, it is forgery fraudulently to * * * erase one signature or indorsement and insert another. * * * It is even forgery for a person fraudulently to alter an instrument previously forged by himself." 2 Wharton, Criminal Law (12th ed.) 1188, sec. 884.

It is quite clear that the alterations admittedly made bring the subject of our present consideration within our forgery statute. We do not overlook the defendant's contention that he is not chargeable with forgery of an instrument executed by himself. As thus broadly stated the doctrine is not maintainable. "If, for example, after he had signed, sealed, and delivered a deed, he should surreptitiously, getting it into his temporary possession, alter it to accomplish some fraud, this would be forgery. If one alters a document which he has previously forged, he commits a new offense." 2 Bishop, Criminal Law (9th ed.) 454. This language is quite descriptive of what actually occurred in the instant case. It may well be said, in passing, that there is nothing in this entire transaction as actually carried out by defendant that is consistent with honest dealing and sound business ethics. There is sufficient evidence, if believed, that clearly establishes the necessary criminal intent on part of defendant to commit the crime here charged, and amply supports the judgment. The objections to instructions given do not appear meritorious. In addition, it may be said that in this class of cases this court is bound by the rule early announced, viz.: "In criminal cases, as in

civil, the credibility of witnesses and the weight to be given their testimony are matters for the determination of the jury. It is for the jury to determine whether it is convinced beyond a reasonable doubt of the defendant's guilt, not for the reviewing court to say whether it is so convinced. A reviewing court can only inquire whether the evidence was sufficient to warrant the jury in finding the defendant guilty." *Bartlett v. State,* 115 Neb. 148, 211 N. W. 994. See, also, *O'Connor v. State,* 123 Neb. 471, 243 N. W. 650.

It follows that the judgment of the trial court is in all respects correct, and it is

AFFIRMED.