### FINLEY v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 12, 1953.

T. E. Mahan and Joe Feather, Williamsburg, H. M. Sutton, Corbin, J. B. Johnson, Harlan, and Cleon K. Calvert, Pineville, for appellant.

J. D. Buckman, Jr., Atty. Gen., and Zeb. A. Stewart, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

J. L. Finley was convicted of uttering a forged instrument, in violation of KRS 434.130, and his punishment was fixed at two years' confinement in the penitentiary. He appeals, asserting numerous grounds of error.

J. L. Finley and his brother Charles had executed a note to the First National Bank of Williamsburg, in the amount of $600. When the note became due, $300 was paid by J. L. and a renewal note for $300, signed by both the brothers, was executed. When the renewal note fell due, the bank notified J. L. and sent him a form for a second renewal note. Charles was living in Tennessee and was not immediately available to sign this note, so J. L. signed his own name and the mother of the two men, at J. L.'s request, signed Charles' name. J. L. delivered the note to the bank and the first renewal note was surrendered to him. J. L. and the mother both admitted that they had no authority to sign Charles' name. The prosecution is for uttering the second renewal note.

The first contention of the appellant is that the demurrer to the indictment should have been sustained because (1) there was no allegation that the uttering was done with fraudulent intent, (2) there was no allegation that Charles' name was signed without his authority, and (3) the acts constituting the forgery were not stated.

The first ground is not sustainable because we find that the indictment specifically alleges that the uttering was done with fraudulent intent. The second and third grounds have no merit because in an indictment for uttering a forged instrument it is sufficient to state the acts constituting the uttering, and it is not necessary to state the acts constituting the forgery. Com. v. Cochran, 143 Ky. 807, 137 S.W. 521; Honeycutt v. Com., Ky., 245 S.W.2d 444.

It is next contended that the court erred in refusing to permit the mother to answer a question as to whether it was her custom to sign similar papers for her children. The answer to this is that the mother did not claim that she had any authority, by

virtue of a custom, to sign Charles' name to the note. In fact, her testimony shows that she was reluctant to sign the note, and did so only after J. L. assured her that it was all right. Shelton v. Com., 229 Ky. 60, 16 S.W.2d 498, is distinguishable, because in that case the defendant maintained throughout that he had authority by virtue of a custom to sign his brothers' names.

The third contention is that the court erred in refusing to give a directed verdict for the defendant. This is on the theory that there was no proof that the mother had any fraudulent intent in signing Charles' name. The argument is that one cannot be convicted of uttering a forged instrument without proof that the instrument was in fact forged, and in order to prove the latter it must be shown that the person who actually signed the name had a fraudulent intent.

We think that under the facts of this case the intent of the mother was immaterial. The evidence shows that she signed Charles' name at J. L.'s request and direction. To all intents and purposes the forging was done by J. L., and his intent to defraud was sufficiently established. The situation is the same as if J. L. had actually done the signing. Carter v. Com., 311 Ky. 252, 223 S.W.2d 900; Robinson v. Com., 217 Ky. 129, 288 S.W. 1044.

It is further argued, in support of the claim of right to a directed verdict, that there could have been no intent to defraud because, under the circumstances, the second renewal note could not have operated to defraud anyone. It is pointed out that Charles is solvent, and that he remains liable on the first renewal note, so neither he nor the bank could be adversely affected by the uttering of the forged second renewal note. This argument loses sight of the fact that J. L. could, and apparently did, receive some benefit from the standpoint of an extension of time for payment of his own obligation as represented by the note. Also, the law is well established that the actual accomplishment of a fraud is not a necessary element of the offense of uttering a forged instrument. Com. v. Fenwick, 177 Ky. 685, 198 S.W. 32, L.R.A.1918

B, 1189; Fain v. Com., 287 Ky. 507, 154 S.W.2d 553.

It is next contended that the evidence was fatally at variance with the indictment. This is on the theory that the indictment charged that upon presentation of the note the bank paid J. L. $300 in money, whereas the proof showed that J. L. did not receive any money in the transaction, but only the cancelled first renewal note. In our opinion this variance was not such as to mislead the accused in making his defense, or to expose him to the danger of double jeopardy, and therefore it was not material. Thomas v. Com., 259 Ky. 786, 83 S.W.2d 460; Harr v. Com., 245 Ky. 278, 53 S.W.2d 575; Miller v. Com., 234 Ky. 224, 27 S.W.2d 957.

The fifth contention is that the instructions were erroneous, in failing to require the jury to find that the actual signing of the note was done with fraudulent intent. The argument here is the same as the arguments hereinbefore discussed concerning the sufficiency of the indictment and the right of the defendant to a directed verdict, and the answers are the same.

The sixth contention is that the court erred in refusing to instruct on the defendant's theories of the case. One theory was that the mother had no fraudulent intent in signing Charles' name to the note. This theory has been disposed of. Another theory was that, as between Charles and J. L., each was supposed to pay one-half of the original $600 note, and since J. L. had paid his half, J. L. had no real criminal intent in uttering the forged renewal note. The contention seems to be that these circumstances would amount to an avoidance of the crime. The obvious answer is that the circumstances would not constitute an avoidance, because as between the bank and the two brothers, both were liable on the note. The fact that Charles had the primary obligation for the remaining $300 would furnish no excuse for the forging of his name by J. L. A third theory was that Charles subsequently ratified or condoned the forgery. However, ratification or condonation is not a defense. 37 C.J.S., Forgery, § 89, page 97.

The seventh contention relates to newly discovered evidence. Since we are reversing the case for reasons hereinafter discussed, it will not be necessary to pass on this question.

The final contentions relate to the admission of incompetent evidence, and improper argument by the prosecuting attorney. Since the alleged incompetent evidence and improper argument bear a close relationship, we will consider them together.

■ Charles was permitted to testify that J. L. "beat me out of" about $10,000. The mother was required to testify, on cross-examination by the Commonwealth, that at the time she signed the $300 note she also signed Charles' name to two other renewal notes, for $4,300 and $1,200 respectively. The defendant himself brought out, on cross-examination of character witnesses introduced by the Commonwealth in rebuttal, that several of them had been "beaten out" of money by the defendant. The officers of the bank were permitted to testify that the renewal note had not been paid, and had been charged off as a bad debt, and the bank had been "defrauded" of $300 in the transaction.

It is doubtful whether any of the foregoing testimony, standing alone, was prejudicially erroneous because (1) there was an admonition as to the purpose for which Charles' testimony could be considered; (2) the evidence of the mother signing two other notes could be considered competent as tending to show a plan, system and guilty knowledge; Miller v. Com., 301 Ky. 66, 190 S.W.2d 864; Hedger v. Com., 294 Ky. 731, 172 S.W.2d 560; (3) the testimony of the character witnesses that J. L. had beaten them out of money was brought out by the defendant, and no objection was made that the answers were not responsive; (4) the evidence that the note had not been paid probably was admissible as bearing on the question of fraudulent intent. (On this last point, Shelton v. Com., 229 Ky. 60, 16 S.W.2d 498, is distinguishable, because there the testimony of the accused's brothers that they were unwilling to pay the note was held prejudicial because the accused's main defense was that he had au-

thority from his brothers to sign their names.)

■ Although the evidence above mentioned, considered alone, perhaps was not prejudicial, nevertheless, when it is taken with the argument of the prosecuting attorney we think the combined effect was to deprive the defendant of a fair trial.

The objectionable portions of the argument were:

"* * * the defendant stuck him (Charles) for nine thousand dollars on notes he signed for his brother. * * * That's the proof here. We proved it right on the witness stand. * * *

"* * * the defendant is a deadbeat, a skin-flint. * * * We proved exactly what he was and if the Court would have allowed us and give us more time we would have brought in five hundred witnesses who would say the same thing. * * *

"* * * This client of yours with the lily-white hands and black heart, he swore it. Six witnesses tell you this man is a beat, a regular skin-flint and dead-beat.

"* * * And she (the mother) said right here herself that there was one for forty-three hundred, and another for twelve hundred and this three hundred dollar note which were all signed at the same time. * * *

"He is a slick artist—lily-white hands and a black heart. We've proved him what he is, so put the brand on him. * * *"

The prejudicial effect of the argument lies in the emphasis on conduct of the accused other than the offense for which he was on trial. There was a studied effort to impress upon the jury that the defendant had defrauded other people. There was no occasion to describe him as a "dead beat" and a "skin-flint" merely on the basis of the one offense with which he was charged. The prosecuting attorney deliberately referred to the testimony of Charles about being defrauded on other notes, the testimony of the six character witnesses as to being "beaten out" of money by J. L., and

the testimony of the mother concerning the forging of the other notes, for the obvious purpose of convincing the jury that J. L. should be found guilty because of his general bad character. Although, for the reasons hereinbefore indicated, the defendant may not have been in a position to complain of the admission of the testimony so referred to in the argument, nevertheless this did not warrant the prosecuting attorney in emphasizing that testimony and encouraging the jury to accept the testimony as having a direct and material bearing on the guilt of the accused.

Since the defense of the accused was based on a lack of fraudulent intent, it was particularly prejudicial for the prosecuting attorney to resort to evidence of limited admissibility for the purpose of branding the accused as an habitual defrauder.

The judgment is reversed, with directions to grant a new trial.